```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

RONALD AND KELLY SHAW,              :
                                    :
        Plaintiffs,            :
                                    :
v.                                  :   Case No. 2:23-cv-634
                                    :
ACADIA INSURANCE COMPANY,           :
                                    :
        Defendant.             :

## OPINION AND ORDER

### I. Introduction

Plaintiffs Ronald and Kelly Shaw ("the Shaws") filed this lawsuit against Acadia Insurance Company ("Acadia") claiming that Acadia breached its contractual obligation to fully and fairly compensate Ronald Shaw for injuries suffered in a car accident. ECF No. 5 at 4-5. They also claim that Acadia breached its contractual duty of good faith and fair dealing by, among other things, failing to adequately investigate Shaw's injuries and making a "low ball" settlement offer. *Id.* at 5-6. Acadia moved to bifurcate the case into a preliminary trial on the underlying injury claim followed by a subsequent trial on the bad faith claim (if necessary). ECF No. 16. It also moved to stay discovery on the bad faith claim. *Id.* For the following reasons, Acadia's motion is denied.

## II.  Factual and Procedural Background

This case began with a car accident on September 30, 2020. Ronald Shaw was rear-ended in East Windsor, Connecticut, by a vehicle operated by Alejandro Jimenez-Sanchez ("Jimenez"). ECF No. 5 at 1. Shaw suffered harm that he alleges amounts to more than $50,000 in "injuries and losses." *Id.* at 5. Defendants claim that Shaw settled with Jimenez' insurer, Allstate, for the policy limit: $25,000. ECF No. 16-1 at 2.

Plaintiffs allege that Shaw's vehicle was insured by Acadia under a policy which included "underinsured motorist" benefits with limits of $1,000,000. ECF No. 5 at 1. They state that because of this policy, "Acadia is jointly liable with [Jimenez] for damages Plaintiffs are or would be entitled to recover from [Jimenez] because of the" crash. *Id.* at 3. They also allege that Acadia's "Business Auto Policy," in effect at the time of the crash, represented that "Acadia's goal is to minimize the disruption and anxiety that may be felt and get our customers back on their feet." *Id.* Plaintiffs claim that Acadia's obligations under the policy included "fully and fairly" evaluating the claim, conducting a reasonable and non-adversarial investigation, engaging in a good faith attempt to settle the claim, not attempting to settle the claim based on conjecture, and not making "low ball" offers in negotiations. *Id.*

The Shaws allege that Acadia did not live up to these obligations. They state that Acadia received all of Shaw's medical records concerning his crash-related injuries and all of his medical records from the past 7 years, along with an independent medical examination report including review of Shaw's medical history.[1] They also allege that Acadia "did not retain a medical expert" to help it fairly evaluate Shaw's claim, and did not rely on any expert opinion in developing an assessment of the claim. *Id.* at 4.

Acadia attempted to settle Shaw's claim for $10,000. *Id.* It apparently then raised its offer to $15,000. *Id.* Plaintiffs allege that prior to making this offer, Acadia "did not conduct a full and fair investigation of [Shaw's] injuries," did not conduct any investigation of Shaw's injuries, and should have known that the value of Shaw's injuries exceeded $15,000. *Id.*

Plaintiffs then filed this lawsuit, claiming breach of contract stemming from Acadia's failure to compensate Plaintiffs for their injuries and losses resulting from the accident. *Id.* at 4-5. They also state that Acadia violated its duty of good faith and fair dealing by failing to adequately investigate

---

[1] Acadia states that this independent report indicated that Shaw's medical bills for his aggravation claim totaled $10,531. ECF No. 16-1 at 2.

3

Shaw's claim, making "low ball" offers, and refusing to conduct settlement discussions in good faith. *Id.* at 5-6.

Acadia has filed a motion seeking to bifurcate Plaintiffs' bad faith claim and underlying bodily injury claim under Federal Rule of Civil Procedure 42(b). That motion is ripe.

### III. Discussion

Rule 42(b) provides that "for convenience, to avoid prejudice, or to expedite and economize, [a] court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Decisions to bifurcate trials are "well within the discretion of district courts." *In re Sept. 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015). Because "the general practice is to try all the issues in a case at one time, separation of issues for trial is not to be routinely ordered." *Cole v. AADCO Med., Inc.*, No. 2:15-CV-200, 2016 WL 9526677, at *3 (D. Vt. Aug. 23, 2016) (citing *Miller v. Am. Bonding Co.*, 257 U.S. 304, 308 (1921); Fed R. Civ. P. 42 advisory comm. note)). The Second Circuit has approved of bifurcation when claims are predicated on "different factual and legal issues," *Oorah, Inc. v. Schick*, 552 F. App'x 20, 23 (2d Cir. 2014), when "litigation of one issue may obviate the need to try another issue," *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996), or when "one party will be prejudiced by evidence presented against another party." *Amato v. City of*

4

*Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999).

Additional relevant factors include:

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

*Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). "The party seeking bifurcation bears the burden of establishing that bifurcation is warranted." *Id.*

Acadia states that it will suffer "irreversible damage if the jury is allowed to hear evidence regarding alleged unfair settlement practices" at the same time as it hears evidence regarding the alleged bodily injury issue. ECF No. 16-1 at 4. But it is undisputed that the bodily injury issue underlies the bad faith claim. In other words, the evidence relevant to whether Shaw suffered a serious bodily injury – and how serious that injury was – will also be relevant to the bad faith issue, mitigating the prejudicial effect because if the jury finds that there was no serious bodily injury, it will also likely find that there was no bad faith. Concern over confusing the jury with multiple issues is misplaced. A reasonable juror can be expected to understand the interplay between the two issues, and to understand that Shaw's complaint of bad faith results from his claimed injury – not the other way around.

5

Additionally, this Court previously explained that "[t]he potential for prejudice to the insurer is but one of several factors this Court weighs" when deciding whether to bifurcate personal injury claims from bad faith claims.[2] *Fraser v. Concord Gen. Mut. Ins. Co.*, No. 2:06-CV-210, 2009 WL 890123, at *2 (D. Vt. Mar. 30, 2009). So too here.[3] The risk of prejudice to Acadia is outweighed by judicial economy benefits and convenience to the parties. *Id.* If the Court were to bifurcate the issues, discovery and trial preparation would occur in two separate phases, but much of the relevant evidence would overlap. For instance, in determining the extent of Acadia's alleged bad faith, Plaintiffs would need to recall witnesses to testify to the extent of the injury and, correspondingly, whether Acadia made an unfairly low offer. ECF No. 23 at 6 ("Damages in this case are inextricably intertwined with the contract claims.").

---

[2] Acadia cites a litany of cases that decided to bifurcate claims in nominally similar cases. ECF No. 16-1 at 4. None are from Second Circuit courts, and all are from before 2005.
[3] Acadia asserts that this case is unlike *Fraser* because here, Acadia has "demonstrated how it would be prejudiced by a trial of the bad faith claim together with the underlying bodily injury claim." ECF No. 27 at 3. But the insurer in *Fraser* also argued that it would be prejudiced by consideration of both issues, and Acadia has not offered reasons why this case is substantially different. As the Court concluded in that case, Acadia has not articulated why "the mere potential [of prejudice] is strong enough to outweigh the undeniable benefits of judicial economy and convenience to the parties, witnesses and jurors of trying all of the issues in this case at one time to one factfinder." *Fraser*, 2009 WL 890123, at *2.

Acadia suggests that if an ultimate jury award on the underlying bodily injury claim is "less than the Defendant's offers and/or within the 'fairly debatable' standard of *Bushey v. Allstate*, 164 Vt. 399 (2009), then [Acadia's] settlement offers would be, as a matter of law, not bad faith," obviating the need for discovery on the bad faith claim. Assuming (without deciding) that this true, if a jury award on the bodily injury claim is *greater* than Acadia's offers, the bad faith claim may still proceed. Additionally, Acadia's concern with unnecessary discovery is overblown. It states that discovery on the bad faith claim would involve unnecessary expense unrelated to the bodily injury claim, but it references avoiding discovery on its "claims files" and other materials such as the "underwriting file, claims manuals," and depositions of Acadia officials involved in Shaw's claim. ECF No. 27 at 1. All of these are plausibly relevant (again, without deciding) to the bodily injury claim too, insofar as Acadia's assessment of Shaw's injury is relevant to how much Shaw was properly owed under the policy in the first place.

Finally, Acadia argues that the Court should bifurcate the issues because "Plaintiffs' bad faith claim is unlikely to even survive summary judgment." ECF No. 16-1 at 5. It goes on to outline the substantive standard for a bad faith claim, and states that Plaintiffs' claims are not "fairly debatable." *Id.*

at 5-6 (citing *Bushey*, 164 Vt. at 399). Procedurally, this argument gets Acadia too far out over its skis.[4] Bifurcation on the basis of a substantive standard would involve a preliminary determination regarding the merits of Plaintiffs' bad faith claim. The Court will not bifurcate on that ground.

Acadia also moves to stay discovery post-bifurcation. Because Acadia's motion to bifurcate is denied, "a stay of discovery will serve no useful purpose." *Fraser,* 2009 WL 890123, at *2. Accordingly, Acadia's motion to stay discovery is also denied.

## IV.  Conclusion

For the foregoing reasons, Acadia's motion to bifurcate and stay discovery as to the bad faith claim (ECF No. 16) is **denied.**

DATED at Burlington, in the District of Vermont, this 3rd day of May, 2024.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

[4] Contrary to Acadia's protestations, Shaw's claim is not that "because [Acadia] does not have its own [independent] doctor and because the claims representative is not a doctor," Acadia – or the Court – must "accept all findings, opinions, etc., of the Plaintiff's [independent] doctor." ECF No. 27 at 1. Relevant questions include whether Shaw's doctor was credible, whether Acadia appropriately relied on the opinion of its claims representative, and whether its offers differed from its obligations under the policy. These are all issues that the Court (on a motion to dismiss or summary judgment), or a jury, may evaluate at further proceedings in this litigation. Credibility challenges to Acadia's claims representative are not unduly prejudicial to Acadia.