```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT

RONALD AND KELLY SHAW,              :
                                    :
          Plaintiffs,               :
                                    :
v.                                  :    Case No. 2:23-cv-634
                                    :
ACADIA INSURANCE COMPANY,           :
                                    :
          Defendant.                :
```

## OPINION AND ORDER

Plaintiffs Ronald and Kelly Shaw ("Plaintiffs" or "the Shaws") bring this action against Acadia Insurance Company ("Acadia") claiming that Acadia breached its contractual obligation to fairly compensate Ronald Shaw for injuries suffered in a car accident.  Plaintiffs also claim that Acadia breached its contractual duty of good faith and fair dealing by, among other things, failing to adequately investigate Shaw's injuries and make a reasonable settlement offer.  Pending before the Court is the Shaws' motion to compel documents relating to Acadia's claim evaluation.  Acadia argues that the information at issue is either protected by the work product doctrine or is irrelevant.  For reasons set forth below, the motion to compel is granted in part and denied in part.

## Background

On September 30, 2020, Ronald Shaw was rear-ended by a vehicle operated by Alejandro Jimenez-Sanchez ("Jimenez").  ECF

No. 5 at 1.  Plaintiffs settled with Jimenez's insurer, Allstate, for the $25,000 policy limit.  ECF No. 16-1 at 1-2.  Shaw's vehicle was insured at the time by Acadia, which provided an underinsured motorist benefit ("UIB") with a limit of $1,000,000.

Plaintiffs asserted a claim under the UIB policy, requesting payment in the amount of the policy limit.  Acadia counteroffered in the amount of $10,000, and subsequently raised its offer to $15,000.  ECF No. 5 at 4.  Plaintiffs allege that Acadia "did not conduct a full and fair investigation of [Shaw's] injuries" and should have known that the value of those injuries exceeded its offers.  *Id.*  Unable to reach a settlement, Plaintiffs filed this lawsuit claiming breach of contract and breach of Acadia's duty of good faith and fair dealing.

Now before the Court is a motion to compel documentation underlying Acadia's assessment of the case.  Plaintiffs previously made a discovery request, in conjunction with their notice of deposition under Federal Rules of Civil Procedure 30(b)(2) and 30(b)(6), for all documents relating to Acadia's evaluation their claims.  Acadia reportedly produced its claims file consisting of 795 pages of documents, withholding certain materials identified in its privilege log.  Acadia also produced claims manuals, redacting portions it deemed irrelevant to this

2

case.  Plaintiffs object to both the assertions of privilege and the claims manual redactions.  Plaintiffs also contend that other requested information was never provided.

With respect to privilege, Acadia cites the work product doctrine, arguing that the withheld documents were generated in reasonable anticipation of litigation.  Acadia contends that Plaintiffs' counsel sent an initial settlement demand on August 8, 2023, after which time the claims adjuster believed litigation was likely.  Plaintiffs argue that it was not until August 29, 2023, when Acadia sent its counteroffer, that Acadia could have anticipated litigation.

Among the documents sought in the motion to compel is Acadia's Bodily Injury Settlement Evaluation Tool, which was reportedly generated on August 24, 2023.  Plaintiffs also seek production of the Acadia File Summary Analysis dated August 29, 2023; the Acadia Loss Analysis Report (to the extent it is not the same as the File Summary Analysis); documents regarding the education, training and experience of adjusters; publications and information used to evaluate claims and upon which Acadia relied in making its settlement offers; and duties to the insured recognized by Acadia in evaluating a first-party claim.  Plaintiffs further ask the Court to compel production of unredacted Claims Manuals, and to order a second deposition of Acadia's Rule 30(b)(6) witness at Acadia's expense.

**Discussion**

Federal Rule of Civil Procedure 37(a)(1) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). When a party claims that materials are protected by a privilege, "[i]t is axiomatic that the burden is on [that party] to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984); *see also Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011) ("The party asserting work-product immunity bears the burden of establishing that it applies.").

Plaintiffs' motion first focuses on two documents identified in the privilege log: the Bodily Injury Settlement Evaluation Tool and the Loss Analysis Report. Acadia claims that these items are protected as work product under Federal Rule of Civil Procedure 26(b)(3)(A), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Plaintiffs dispute whether the items in question were prepared in anticipation of litigation or were instead developed in the ordinary course of evaluating their claim.

4

Courts have noted that "the issue of work-product protection is particularly complicated in the context of insurance claims, since insurance companies are 'in the business of investigating and adjusting claims,' thereby blurring the distinction between documents prepared in the ordinary course of business and those prepared because of anticipated litigation." *Koppel v. United Nat'l Ins. Co., Inc.*, 2008 WL 5111288, at * 1 (E.D.N.Y. Nov. 26, 2008) (quoting *Mount Vernon Fire Ins. Co. v. Platt*, 1999 WL 892825, at *2 (S.D.N.Y. Oct. 19, 1999)).  When determining whether documents prepared by or for an insurance company are entitled to work-product protection, "federal courts generally take a fact specific approach." *Selective Ins. Co. of America v. Swarey*, 2011 WL 240750, at * 1 (W.D.N.Y. Jan. 24, 2011).

The Second Circuit has adopted a "causation" test for determining whether a document was prepared in anticipation of litigation.  *See United States v. Adlman*, 134 F.3d 1194, 1202-03 (2d Cir. 1998).  Under this test, the party seeking to withhold a document must demonstrate that the document was created "because of" the anticipation of litigation.  *Id.*  Documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protected.  *Id*. (citing Fed. R. Civ. P. 26(b)(3), Advisory Committee's note ("Materials assembled in the

5

ordinary course of business ... are not under the qualified immunity provided by this subdivision.")).

Here, Acadia cites the August 8, 2023 demand letter from Plaintiffs' counsel as the date after which all of its calculations and analyses constituted litigation work product. Plaintiffs note that the documents in question, though generated after that date, were developed prior to Acadia's August 29, 2023 rejection letter. They submit that the date of the rejection letter, and not the date of their initial demand, was the earliest possible date for anticipating litigation.

In the insurance context, "courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection." *Mount Vernon Fire Ins. Co. v. Try 3 Building Servs., Inc.*, 1998 WL 729735, at *5 (S.D.N.Y. Oct. 16, 1998); *see also Koppel*, 2008 WL 5111288, at *2 (same); *Tudor Ins. Co. v. McKenna Assocs.*, 2003 WL 21488058, at *3 (S.D.N.Y. June 25, 2003) ("An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins."). Retention of counsel may also indicate the anticipation of litigation. *See Tudor Ins.*, 2003 WL 21488058, at *3. Here, the only evidence of a coverage decision is the August 29, 2023 counteroffer. Litigation

6

counsel was not retained until several months later.  ECF No. 47 at 9.

An insurer may rebut the presumption of discoverability with "specific competent proof that it possessed a 'resolve to litigate' when the documents were created."  *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, at *12 (S.D.N.Y. Aug. 28, 2008) (citations omitted); *see also 105 St. Assocs., LLC v. Greenwich Ins. Co.*, 2006 WL 3230292, at *2 (S.D.N.Y. Nov. 7, 2006) ("in the insurance context, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation").  In this case, Acadia has submitted an affidavit from claims representative Kevin Corrigan attesting to the "substantial threat of litigation" after he received the demand letter on August 8, 2023.  ECF No. 50-7 at 3.  The threat of litigation, however, is not the same as a resolve to litigate.  Nor does Mr. Corrigan claim that the documents in question – the Settlement Evaluation Tool and the Loss Analysis Report – were prepared because of anticipated litigation rather than in the ordinary course of business.  *See Adlman*, 134 F.3d at 1202 ("the 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business or that would have been

7

created in essentially similar form irrespective of the litigation").

The Court therefore finds that Acadia has failed to meet its burden of showing that the Bodily Injury Settlement Evaluation Tool and the Loss Evaluation Report are each protected by the work-product doctrine.  *See, e.g., Selective Ins. Co. of America*, 2011 WL 240750, at *1 ("Generally, '[a]n investigation that is undertaken to determine whether there is coverage, whether the claim should be paid and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation.'") (quoting *Nicklasch v. JLG Indus., Inc*., 193 F.R.D. 568, 570 (S.D. Ind. 1999)).  That said, any information within those materials that clearly reflects the "mental impressions, conclusions, opinions, or legal theories of [Acadia's] attorney or other representative concerning the litigation" may be redacted and identified in a privilege log.  Fed. R. Civ. P. 26(b)(3).  The remaining requested materials, including adjuster training information and publications used in developing a settlement offer, shall also be produced subject to that same limitation.

Plaintiffs also object to the redactions in the Claims Manuals.  Acadia argues that those redactions pertain to irrelevant categories of claims, such as workers' compensation, and have no relevance here.  A review of the redacted documents

8

(ECF No. 50-4) suggests that Acadia's characterization is accurate, although some of the redactions do not reveal the covered subject matter.  The Court notes, however, that the parties have consented to a Confidentiality Order and that redacted portions could be labeled as confidential.  In general, redactions on grounds of "irrelevance are ... impermissible, especially where, as here, a confidentiality stipulation and order."  *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018); *see also John Wiley & Sons. Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege.").  The motion to compel the complete Claims Manuals is therefore granted, and proprietary materials may be labeled as confidential at Acadia's discretion.

Finally, Plaintiffs ask the Court to order a second deposition of Acadia's representative, with costs and fees to be covered by Acadia.  The Court declines to award such relief at this time, particularly in the absence of any showing of bad faith or misconduct.  *See Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357 (2d. Cir. 1991) ("A district court has wide discretion in imposing sanctions."); *Vernon Vill., Inc. v. Gottier*, 755 F. Supp. 1142, 1156 (D. Conn. 1990) (denying motion for costs related to future

depositions "absent any showing of bad faith or misconduct by the defendants").

## **Conclusion**

For the reasons set forth above, Plaintiffs' motion to compel (ECF No. 47) is granted in part and denied in part.  The parties shall bear their own fees and costs relative to the motion.  *See* Fed. R. Civ. P. 37(a)(5)(C).

DATED at Burlington, Vermont, this 9th day of September, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge